7   569
95  327

## WHITE v. TOLES & DUNLAP, USE, &c.

1. T. & D. were mechanics working in partnership; T. agreed with W. to do some work on his house, *for which the latter was to pay him in board*; there was no evidence to show whether D. was present when the contract was made, or that he knew anything of its terms. Both T. & D. did the work, and T. boarded with W. while they were doing the work, and for a sufficient length of time thereafter, for his board to amount to a sum equal to the price of the work: *Held*, that the contract was valid, and that the work being paid for as stipulated, an action could not be supported to recover the price of it, in consequence of any interest of D.

Writ of error to the County Court of Greene.

THE defendants in error declared against the plaintiff for work and labor done, goods, wares, &c. sold and delivered, and upon an account stated. The cause was tried upon the pleas of non-assumpsit, payment and set off; the jury returned a verdict for the plaintiff below, and judgment was rendered accordingly. On the trial the defendant excepted to certain decisions of the Court. From the bill of exceptions, it appears that the plaintiff, Toles, contracted with the defendant to put tin gutters to his house, the latter undertaking "to pay for the

72

work by board." Both the plaintiffs put up guttering to the value of about eighty dollars; and while they were doing the work, Toles boarded with the defendant, and continued to board with him, at least eight or nine months. There was no evidence to show, that Dunlap was, or was not present, at the time the contract was made between Toles and the defendant; nor was there any evidence as to Dunlap's knowledge of the terms of the contract. The plaintiffs were partners when they did the work.

The defendant's counsel prayed the Court to charge the jury, that if Toles, one of the partners, made a contract with the defendant to put guttering to his dwelling house, and it was at the same time agreed, that the latter was to pay for the work by board, and that Toles did board with him until the sum due therefor was equal to the value of the guttering, then the plaintiffs could not sustain their suit, but their demand would be satisfied. This charge was refused; and the Court charged the jury, that the board would not be a satisfaction of the plaintiffs' demand, unless the defendant and Toles had settled and passed receipts, or had in fact made a final settlement of their accounts.

A. GRAHAM, (of Greene,) for the plaintiff in error.

S. F. HALE, for the defendants in error, insisted, that Dunlap was not bound by the contract between Toles and the defendant; for there is no evidence from which his assent to it may be implied. [Pierce & Baldwin v. Pass & Co. 1 Porter's Rep. 232; Evrnghim v. Ensworth, 7 Wend. Rep. 326.]

COLLIER, C. J.—Partnership is defined to be a voluntary contract, between two or more persons, for joining together their money, goods, labor, and skill, or either, or all of them, upon an agreement, that the gain or loss, shall be divided proportionably between them. [Wat. on Part. 1; Story on Part. 2; Collyer on Part. 2.] This definition very clearly indicates, that partnerships are not restricted to a business in which parties unite their money or property, but they may also embrace a union of labor, or skill. It may then be conceded, that all the incidents of a partnership so far as appropriate, attached

White v. Toles & Dunlap, use, &c.

to the act or occupation of the plaintiffs; and upon this assumption we will consider the case.

In Pierce & Baldwin v. Pass & Co., 1 Porter's Rep. 232, the plaintiffs declared against the defendants for goods sold and delivered; the defendants proved an agreement between themselves and Pierce, one of the ~~defendants~~, that the goods, for the price of which the action was brought, were to be taken in payment for the board of Pierce. It was not proved, that Baldwin consented to this agreement, or had any knowledge of it. The Court said, "All the authorities concur in the position, that the individual debts of a partner may be chargeable upon the firm, by the contract of one member, if the other partners assent to such a charge." Further, according to the English decisions, the presumption is against the partnership, and the *onus* of showing a fraudulent collusion between the creditor and individual partner, or, at least, a want of authority on the part of the latter, rests on the partnership. Again, say the Court, "The charge should have been, that if the jury believed from all the evidence in the case, that Baldwin, either by implication, or expressly agreed to, or authorized the appropriation of the firm effects, to the satisfaction of the tavern account of Pierce, that then the set off was good against the plaintiff."

It has been held, that where one partner delivers the property of the partnership in payment of his private debt, the person so receiving it, is liable to the firm in an action for goods sold and delivered, if he was aware that they were the owners of the property. In such case, it is said, that it makes no difference whether the note of the firm be given, or the partnership property applied, to pay the individual debt of a partner. The act in either case, is an appropriation of the joint estate to the purposes of a single member of the firm. [Dob v. Halsey, 16 Johns. Rep. 34.] In Gram & Stewart v. Caldwell, 5 Cow. Rep. 489, it was decided, that one partner could not release a debt due to the firm, in order to extinguish his individual liability. So a joint debt due a partnership, cannot be discharged by one of the partners applying it in payment of an individual debt, owing by him to the debtor of the firm, without the knowledge and approbation of the other members of the concern. [Evernghim v. Ensworth, 7 Wend. Rep. 326;

see also, Lansing v. Hastie, 2 Caine's Rep. 246; Lansing v. Gaine, 2 Johns. Rep. 300; Livington v. Roosevelt, 4 Id. 251; Dubois v. Roosevelt, Id. 262, n; Laverty v. Burr, 1 Wend. Rep. 529; 3 Kent's Com. 41–3; Rogers v. Batchelor, 12 Peter's Rep. 229; Story on Partn. 197 to 212, and notes; Collyer on Partn. 279, et post; Holme v. Karpser, 5 Binn. Rep. 471; Baird v. Cochran, et al, 4 Sergt. & R. Rep. 397; Bank of Rochester v. Bowen, et al, 7 Wend. Rep. 158; Boyd, et al, v. Plumb, et al, Id. 309; Gansevoort v. Williams & Johnson, 14 Id. 133; Joyce v. Williams, Id. 141; Wilson v. Williams, Id. 146.] It will appear from the citations, that the partnership will be bound, unless third persons had notice, or reason to believe, that the partner who used the firm name, or effects, was acting on his individual account; and although a bill or note may not be binding on the partnership in the hands of the first holder, yet it may afterwards become a valid security, if passed to an innocent indorsee. Further, that where a bill or note is given by one partner on his separate account, in the partnership name, the *onus* of proving the authority, or consent of the copartners lies on the holder. See further, Foot v. Sabin, 19 Johns. Rep. 54; Rolston v. Click, et al, 1 Stewart Rep. 526.

We have stated the law thus at length, that the principles on which it was attempted to sustain the judgment of the County Court, and the foundation on which they rest may be seen. The present case is, in our judgment, clearly distinguishable from those cited for the defendants in error. Here it will be observed, that the defendant engaged one of the plaintiffs to do work for him of the same description that both the plaintiffs were employed about as partners, and agreed to pay him therefore in board. Now the mode of payment was a part of the contract, and it must be supposed, induced the defendant to enter into it, and the question is, whether, in this view of the case, if the defendant has paid according to his undertaking, the right of action in favor of the plaintiffs is not extinguished.

In Pierce & Baldwin v. Pass & Co., it does not appear that Pierce agreed with the defendants previous to the purchase of the goods, that an account to be afterwards made with them for board, would be received in payment. True, it was prov-

ed, that it was agreed between Pierce and the defendants, that the account for board was to be liquidated by goods from the plaintiff's store. It may perhaps be assumed, that the goods, or no part of them, had been previously purchased, especially as it is stated that only one witness proved that the account. for board had been incurred by Pierce, before the defendants purchased the goods from the plaintiffs, while the others testified the reverse. If this were the true state of the case, then the agreement of Pierce to sell the goods of plaintiffs to pay his debt, would be an appropriation of the joint property to his individual use, and this too, when the party receiving it was aware of the fact. The case of Dob v. Halsey, and others already cited, shows that such a transaction would be a fraud on the partnership which cannot be tolerated ; and that the price of goods thus acquired, may be recovered by an action in the firm name for goods sold and delivered.

A partnership formed for commercial purposes, or for the joint employment of labour and skill, may agree to receive in payment of goods, not only money, but something else which is regarded as an equivalent, and it is alike competent for the firm to consent to be thus compensated for work done and materials furnished. If the partners conjointly possess this power, we can conceive of no reason why such a contract in favor of third persons acting *bona fide,* would not be enforced. It is said, one of the most important doctrines attaching to the relation of partners, is, that the contract, or other act of any member of the associated body in matters relating to the joint concern, is, in point of law, the contract, or act of the whole, and consequently binding upon all. This doctrine is said to be established for the benefit of commerce, and more especially founded on the principle, that each partner impliedly constitutes the other his agent, in matters relating to the business of the partnership; so that by the act of the agent the principal is bound. [2 Step. Com. 150, Story on Partn. 1.] True, if the person with whom the single partner deals, is conscious, that the latter is transcending the power actually accorded by his copartners, then the transaction would be a fraud on the latter, and they would not be bound by it. [2 Step. Com. 151 ; Story on Partn. 197–210.] Although fraud is *prima facie* imputable to the individual partner and person

dealing with him, yet it is said to be allowable for the latter to repel the imputation, by proof, that the act was approved by the firm, or from other circumstances, it was " *bona fide,* and unexceptionable, although it went to the discharge of the private debt by one partner only." [Story on Partn. 199, and citations in notes.]

The contract in the present case, does not show any thing of unfairness, or *mala fides* on the part of the defendant; it does not appear that he knew that Toles and Dunlap were in partnership, or that the contract was made with the former, with the expectation, that the firm would perform it. But we have considered the case upon the assumption, that the defendant possessed this knowledge, and contracted with the partnership. It cannot be assumed that the agreement to receive pay in board was prejudicial to Dunlap, or that he was not informed of, and did not approve it; especially as he participated in the labor. The mode of payment must be regarded as an inducement to the defendant to enter into the contract, and after it has been performed by the plaintiffs and payment made in good faith, as stipulated by the defendant, an action cannot be maintained by the firm. To coerce the defendant to pay a second time, would be to charge him beyond his contract, or any thing that can be implied from it, in consequence of the *mala fides* of Toles, (if indeed there be fraud;) and although no fault is attributable to him.

In no view in which the case has been presented to us, can the ruling of the County Court be supported. Its judgment is therefore reversed, and the cause remanded.