No. 90.—WILLIAM PERRY, plaintiff in error, *vs.* BUTT & BANKS, defendants in error.

[1.] When the issue is one of *partnership*, and a witness has been asked whether O. P. T. did not sell goods in the concern, for cash and upon credit, to create the presumption that he was a proprietor, inquiry may be made of the witness, when cross-examined, whether it is not customary for *clerks*, as well as *principals*, to sell goods in this way.

[2.] Upon a motion for a non-suit, on the ground that the testimony does not support the action, it is no violation of the Act of 1850, which inhibits the Judge from expressing his opinion upon the facts, to the Jury, to say whether the proof is or is not sufficient to maintain the suit.

[3.] If three persons agree to sell goods, two of them contributing $3,000 a-piece, and the other rendering his personal services, the profits to be equally divided, after the payment of debts and expenses, and with no stipulation as to losses—whether this constitutes them partners or not, as between themselves, it does as to third persons.

[4.] Refinement in many of the modern cases, English and American, as to what undertakings amount to a partnership, too shadowy; Courts would do well to revert to first principles, and not take leave, altogether, of common sense, as it respects these matters.

[5.] One partner cannot appropriate the partnership effects, in payment of his individual debt; still, he may, in furtherance of the joint business, agree with a hotel-keeper, that provided he will deal with the concern, that his account shall be settled by the board of the partners or their Clerks, and the contract will be binding on the firm.

[6.] Entries on the firm-books, are evidence against the firm, as all the members are presumed to be cognizant of such entries.

[7.] The settlement, with the firm effects, of the private debt of one of the partners, will bind the firm, if subsequently ratified by acquiescence, with a full knowledge of the facts.

Complaint, in Muscogee Superior Court. Tried before Judge IVERSON, August Term, 1853.

Butt & Banks sued William Perry, on a promissory note, for $419. The defendant pleaded, as a set-off, an account for the board of Oliver P. Tillinghast, alleging that he was a partner of the firm of Butt & Banks. Much evidence was introduced upon the question of partnership, and some evidence to show that the firm had previously acquiesced in an agreement between Tillinghast and Perry, that such set-off should be allowed. In the course of the investigation, plaintiff's counsel asked a witness " if it was not customary for clerks to sell goods for cash and on a credit" ? Defendant's counsel objected to the question, which being over-ruled, he excepted.

The Court, among other things, charged the Jury that " the question of partnership did not affect the case, as the co-partnership concern were not liable for the individual debt of one member". To which charge defendant excepted.

The Court charged, farther, that it was not important whether there was a partnership, unless there was proof that the concern had agreed to pay the debt of Tillinghast, or had, after being informed, or had knowledge of the fact, acquiesced in the arrangement made by him and Perry. To this charge defendant excepted.

Defendant's counsel requested the Court to charge—that if the Jury should believe, from the evidence, that Tillinghast was a member of the firm, that the plaintiffs could not recover. The Court declined so to charge, and defendant excepted.

Defendant's counsel, while plaintiff's counsel were making the concluding argument, moved for a non-suit, on the ground of the non-joinder of Tillinghast, as a partner. The Court refused the motion, and said in the hearing of the Jury, that said motion came too late—that if made at all, it should have been made before the case was submitted and argued to the Jury; but that as defendant's counsel insisted on his motion, and the

existence of the partnership was left to the Court, he would decide that the evidence did not establish a partnership, and over-ruled the motion on that ground also. To all of which, defendant's counsel excepted.

Upon these several exceptions, error has been assigned.

JOHNSON & PATTERSON, for plaintiff in error.

DOUGHERTY, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Suit was brought in Muscogee county, by John H. Butt and Willis Banks, merchants and partners doing business under the firm name of Butt & Banks, against William Perry, on a note of hand for $419, $\frac{12}{100}$.

[1.] On the trial, the plaintiffs read the note and there closed their case. The defendant introduced, as a witness, Alfred White, who testified that he acted as clerk for the firm of Butt & Banks, during the time said firm did business; that Oliver P. Tillinghast was also in the store and sold goods for cash and on a credit, and also bartered off goods for other articles; that O. P. Tillinghast was the oldest, most experienced man about the store, and exercised the principal control in the management of the business of the concern; that he understood said Tillinghast to be a partner in the concern of Butt & Banks; that he was present when a conversation was carried on between John Banks, Jno. H. Butt, Oliver P. Tillinghast and Willis Banks; that John Banks said that the concern ought or could make money; that they could sell $30,000 worth of goods, and make 15 per cent. on the amount of sales, which would be $1500 a-piece. He also testified that the terms of said partnership, as he understood, was, that John H. Butt and Willis Banks, each, were to put into the concern three thousand dollars, and Oliver P. Tillinghast was to render services and give his personal attention to the business, and the profits, after paying the debts and all expenses, and paying back to Butt and Banks the money

put into the concern by them, was to be equally divided between said Butt & Banks and Oliver P. Tillinghast.

On the cross-examination of White, he was asked by plaintiff's counsel, if it was not customary for clerks to sell goods for cash and on a credit? The defendant, by his attorney, objected to the question; but it was allowed to be propounded by the Court, and thereupon the defendant excepted.

We think the Judge was right in over-ruling the objection to the interrogatory put to Mr. White. The witness had previously proven that Mr. O. P. Tillinghast was in the store of Butt & Banks, and that he sold goods for cash and on credit; and this testimony was elicited by the defendant, to create the presumption that Tillinghast was a joint proprietor of the concern. Now, to re-but the inference of ownership, arising from this fact, the witness was asked, and we think very properly, to state whether *clerks*, as well as the *principals* in stores, were not in the habit of selling goods for cash and on credit? Surely this was legitimate.

The defendant next introduced, as a witness, Parris J. Tillinghast, who testified that he kept the books of the concern of Butt & Banks; that Oliver P. Tillinghast was also in the store, as a salesman; that he sold goods for cash and on a credit, and also bartered them for other articles; that O. P. Tillinghast had the chief management of the business of the concern; that he bought cotton and goods for the concern—made out bills and sent orders for goods to distant places—carried on, also, the correspondence of said concern, in part; that he understood O. P. Tillinghast to be a member of said firm of Butt & Banks; that, in fact, he was a member of said firm. The terms of said partnership, as he understood, was, that John H. Butt and Willis Banks, each, were to put in said concern, the sum of $3,000, and O. P. Tillinghast was to render services and give his personal attention to the business, and the profits, after payment of the expenses and debts, and refunding to Butt & Banks the capital advanced by them, was to be equally divided—one third to O. P. Tillinghast, and the other two thirds to Willis Banks and John H. Butt.

William Perry *vs.* Butt & Banks.

The defendant then introduced O. P. Tillinghast, who testified that the firm of Butt & Banks was composed of Willis Banks, John H. Butt and himself; that said partnership was formed in the year 1849, and its terms were, that Willis Banks and John H. Butt, each, were to put into said concern the sum of three thousand dollars, and the witness was to render his services and give his personal attention to the business; and after paying all the expenses and debts, and also paying back to Butt & Banks, the money so put into the concern by them, the · witness was to have one-third of the profits—nothing was said about losses. He further testified, that he had the principal control of the business of the concern; that he sold goods on' a credit and for cash—bartered them for other articles—bought goods for the concern, from houses residing near—made out bills and ordered goods from houses at a distance—bought cotton for the concern, and carried on the correspondence, in part; that he was present when the defendant gave the note sued on; that it was given by the defendant for merchandize, bought of Butt & Banks; that the charge for the board of witness, pleaded as a set-off by the defendant, to plaintiff's action, was not included in the settlement, at the time when the note was given; that the account for board was correct, and unpaid; that defendant objected to giving his note, except for the balance due Butt & Banks, after deducting this account for the board of witness. Butt & Banks and John Banks being present, objected to allowing the account, on the ground that Butt & Banks were not liable to pay the individual debt of witness; that after some conversation between the parties, the defendant gave his note for the amount of Butt & Banks' account. Defendant requested witness to give him his note for the board, with his father as security, which was not done. *In a conversation between witness and defendant, upon the subject of boarding, which took place in 1849, defendant said that when merchants or their clerks boarded with him, it was his custom to trade it out, and that he did not expect cash, and that he, witness, assented to it. It was the understanding of witness that defendant's charges for his board, was to be allowed, as*

*payment for any goods he might buy at Butt & Banks ; that defendant had twice settled his account at Butt & Banks, contracted prior to that for which said note was given; and in each settlement, defendant's charges for board of witness, prior to date of each settlement, was allowed ; that witness made each settlement with defendant, and that said settlements were entered on the books of the concern of Butt & Banks, and that either Butt or Banks might have seen said entries, upon an examination of said books, but did not know whether they actually knew of the settlements thus made.*

Plaintiff then introduced Alexander H. Cooper, who testified that Oliver P. Tillinghast came to him as an attorney, to sue out a bail-writ against ————————, who was indebted to the firm of Butt & Banks. Witness inquired of Tillinghast in what capacity he would make the affidavit—as clerk, agent or how ? Tillinghast replied *as agent,* and he did make the affidavit as *agent,* for Butt & Banks.

The testimony being closed, the Court, amongst other things. charged the Jury "That the question of partnership did not affect the case, as the co-partnership was not liable for the individual debt of one member; that it was not important whether there was a partnership, unless there was proof that the concern had agreed to pay the debt of Tillinghast, or had, after being informed or having knowledge of the fact, acquiesced in the agreement or arrangement made by him with the defendant, as to his private debt for board".

To which charge, as given, counsel then and there excepted.

Counsel for the defendant requested the Court to charge the Jury, that "If they should believe, from the testimony, that Oliver P. Tillinghast was a member of the firm of Butt & Banks, that then the plaintiffs could not recover".

The Court refused to charge as requested, and thereupon the defendant excepted.

The defendant, by his counsel, while the plaintiff's attorney was making the concluding argument, moved for a non-suit, on the ground "of the non-joinder of Oliver P. Tillinghast, as a party plaintiff".

William Perry *vs.* Butt & Banks.

The Court refused to grant the motion, and said, in the hearing of the Jury, " That it came too late; that if made at all, it should have been done before the case was submitted and argued before the Jury ; but as the counsel for defendant insisted on the motion, and the question of partnership was left to the decision of the Court, he held that the proof did not establish a co-partnership, and over-ruled the motion on that ground also".

To the refusal of the Court to grant said motion, and also to his expressing an opinion, as to the effect and weight of testimony, the defendant's counsel then and there excepted.

[2.] Why complaint should be made against the presiding Judge, for expressing his opinion, as to a point which he was forced to decide, we cannot very well comprehend. A motion was made and insisted on, that the action be non-suited, on the ground of the non-joinder of the proper parties, as plaintiffs, the proof showing that O. P. Tillinghast was a member of the concern of Butt & Banks. Was not the Court compelled to say whether or not the testimony did or did not establish this fact ?

[3.] Whether Tillinghast was a partner or not, we apprehend the suit was properly brought. The business was conducted in the name of Butt & Banks, and the note sued on was payable to the firm by that name. We see no error in the refusal of the Court to grant a non-suit, especially at the time it was asked. The application should have been for instructions to the Jury. But the important question to be settled in this. case is this : did the evidence of White and the Messrs. Tillinghast, which stands uncontradicted, constitute Oliver P. Tillinghast a partner of Butt & Banks, *quoad* their persons ?

The sum and substance of the statements of these three witnesses, who corroborate each other, to a tittle, is this : That Butt and Banks, each, was to contribute $3,000 a-piece, against which O. P. Tillinghast was to render services, and give his personal attention to the business, and the profits, after paying debts and expenses, and refunding the $6,000 of stock, was to be equally divided between the three.

It is contended that Mr. Tillinghast was an agent, merely, and not a partner. Test this by the principle laid down in the first section of Judge Story's Commentaries on Partnerships: He says, "The principal distinction between a partner and a mere agent is, that the partner has a community of interest with the other partners, in the whole property, and business, and responsibilities of the partnership—whereas, an agent, as such, has no interest in either".

I ask, did O. P. Tillinghast have no interest, in common, with Butt & Banks, in the property, business and responsibilities of this mercantile concern? I will not dwell upon this point—it is too plain. Whether Mr. Tillinghast was an actual partner, as it respects Butt & Banks, or a partner only as to third persons, it is very certain that, under the evidence, he can never be considered as an *agent*, only.

But when does an actual partnership take place? I answer—when two or more persons agree to combine property or labor, or both, in a common undertaking, sharing profit and loss.—Or, in the terms of Mr. Smith, "Partnership exists wherever two or more persons enter into a joint concern or undertaking, of which they are to share the profits and losses". (*Smith on Contracts*, 254.) Or, in the language of Mr. Watson, on Partnerships, (40,) "A partnership is nothing more than a community of interest, between two or more persons, and a sharing of a profit and loss". Or, in the still more pithy phraseology of Judge Shener, in 9 *Johns.* 496, "To constitute a partnership, it needs only an agreement to share in the profit and loss".

[4.] These principles applied to the evidence in this case, appear to me decisive, upon the question of partnership; and show, notwithstanding the somewhat shadowy distinctions that are to be found in the authorities, that Tillinghast was just as much a partner of the concern as Butt & Banks. What was there in the contract to make him less so? True, they contributed money, and he personal services. But none of the cases turn on that distinction. Is it because there was no stipulation, that he should share the losses as well as the profits?

I answer, it is just as much stipulated, as to him, as it is to them. If he is exempt, why are not they? The truth is, in the absence of any express agreement to the contrary, the Law, under this partnership in profits, devolves the losses, likewise, upon each and all of the partners. And that, not only to the extent of the capital employed, but over and beyond that.

It is a remarkable fact, that Judge Story, in defining partnership, says nothing about loss. It is, says he, " A voluntary contract between two or more competent persons, to place their money, effects, labor, skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a *communion of the profits thereof between them*". (*Story on Partnerships,* 2 §.) And the author cites 3 *Kent's Com.* Lecture 43, *p.* 23, 24, 4*th edition. Watson on Partnership, p.* 1, 2*d edition. Gen. on Partnership, p.* 1, 3*d edition. Collyer on Partnership b.* 1, *ch.* 1, *p.* 2*d,* 2*d edition.— Montague on Partnership, b.* 1, *pt.* 1, *p.* 1, 2*d edition.*

Can there be any doubt that Tillinghast, under this agreement, would have been entitled to *divide* whatever was left, after the concern was settled, whether the profits consisted of money, notes and accounts, or merchandise, or all of these combined? And could he not, by bill, have compelled Butt & Banks to have accounted with him for his share?

In listening to the reading of the numerous cases, English and American, in several discussions recently had before this Court, it has occurred to me, that in this, as some other branches of the Law, there is too much attempt at refinement; and that we would do well to come back to first principles, and not take leave, altogether, of common sense, as it respects these matters. State the present case to any plain man of reason and ordinary intelligence : that Butt, Banks & Tillinghast agreed to engage in trade, in the City of Columbus; that the two former having funds, were to put in $3,000 each, and the latter possessing superior skill and experience in business, was to give his personal services and attention ; and that they were to *divide* the nett profits equally, would he have any hesi-

tation in pronouncing this a partnership? And if told that it might be so as to Butt & Banks, but not as to Tillinghast— that the Law looked upon him as an agent merely—would he not be bewildered at such metaphysicallity? I frankly confess, that I am equally troubled and perplexed to comprehend such distinctions. In truth, none such exists. And if this firm failed, Mr. Tillinghast will find himself puzzled for a defence, even against his co-partners, much more strangers, for his proportion of the losses. He did not stipulate with his companions against the hazards of trade, and the usual incidents to the relationship in which he entered. He must take the consequences.

But whether a community of profit constitutes these persons partners, *inter se*, or not. it never has been questioned in any respectable quarter, that it would undoubtedly make them answerable to *third persons*, to whom they have held themselves out, and with whom they have contracted as partners, and who cannot be affected by these secret contracts, as between themselves. This doctrine was fully gone into, in the case of *Waugh vs. Carver*, (2 *H. Bl.* 246,) and is there distinctly laid down by Lord Chief Justice *DeGrey*, and is not now disputed. See *Bond vs. Pittard*, 3 *M. & W.*, 357. And this is decisive of the case before us.

[5.] If Mr. O. P. Tillinghast, then, was a partner, as such, he had the right to make the contract which he did with Mr. Perry. True, as the presiding Judge said, he could not appropriate the partnership effects to the payment of his individual debts. Still, it was competent for him, in furtherance of the partnership business, to say to Mr. Perry, buy your groceries from us, and we will take it out in whole or in part, in the board, either of ourselves or of our clerks. Such an arrangement appertained strictly to the partnership business.

[6.] Then, again, here was notice to Butt & Banks of the settlement of the accounts, for the board of Tillinghast, for the preceding years, and their acquiesence in it; for we hold, that the entries on the books of the firm, are evidence against the firm, and that all the members are presumed to be cogni-

zant of such entries.   Is not this sufficient to charge them, upon the same principle that the master is bound for debts contracted by his servant, if it appear that it has been customary with him to pay  similar demands ?   He thus gives to his servant implied credit.

[7.] And such is the irresistible inference, from the evidence furnished by the books of this concern, as to their ratification of the understanding between Perry and Tillinghast, to wit: that his account for board should be set off against his dealings at the store.