[Hurt v. Clarke.]

# Hurt v. Clarke.

### Action on Account for Goods Sold and Delivered.

1. *Authority of partner to bind partnership.*—An agreement between one member of a mercantile partnership and a practicing physician, who has knowledge of the partnership, that the latter shall obtain goods from the partnership in payment for professional services rendered and to be rendered to such partner individually, is outside of the partnership business, and beyond the scope of the partner's authority; and such agreement is not binding on his co-partner, or the partnership, unless expressly authorized, or subsequently ratified.

2. *Ratification of partner's unauthorized act.*—In such case, an offer by the other partner, when trying to collect the account due to the partnership, to allow the physician's account as a credit or set-off, if he will pay the balance in money, until accepted and complied with, is not a ratification of the unauthorized agreement under which the account was contracted.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. GEO. H. CRAIG.

This action was brought by Peter T. Hurt, against C. J. Clarke; was commenced on the 27th October, 1874, and was founded on an account for goods, wares, and merchandize, sold and delivered to the defendant during the years 1871, 1872, and 1873, by the firm of Hurt, Corbin & Atkins, of which the plaintiff was a member, amounting to $540.66. The complaint contained two counts; the first claiming the said amount as due by account for goods sold by said firm, alleging that it was due on the 1st October, 1873, and was the property of the plaintiff; and the second, on an account stated between plaintiff and defendant on the 1st July, 1874. The defendant pleaded, "in short by consent," payment, set-off, accord and satisfaction, and the general issue; and issue was joined on all these pleas.

The defendant was a practicing physican, and a partner with Dr. James Kent, doing business under the firm name of Kent & Clarke. The account sued on was contracted, as the defendant testified, under a verbal agreement between him and said W. T. Atkins, as follows: "About the 17th January, 1871, Atkins came to me, and said, that he owed me for medical services rendered to his family, and wanted to employ Kent & Clarke to do his medical practice; that he had no money to pay me, and wanted me to buy goods from his firm in payment of my bill. As I needed the goods, and did not want to pay money for them; and as I wanted to collect a debt due me, and did not want to go in debt, I

[Hurt v. Clarke.]

agreed to do his practice, and pay myself by purchasing goods from his firm. Under this arrangement, I continued to get goods from said firm, from time to time, as I needed them, down to the dissolution of said firm, supposing that they were paid for." The plaintiff had no knowledge or notice of this agreement until after the dissolution of the firm of Hurt, Corbin & Atkins, which took place in September, 1873.

"About the 17th December, 1873," as the plaintiff testified, "while I was stopping a few days at my place of business in Selma, on my way from New York to my home in Marion, one Francis came to me, and stated that, at the request of the defendant, he wanted to arrange a settlement of the defendant's indebtedness to the firm of Hurt, Corbin & Atkins; that the defendant held a claim against said W. T. Atkins, and if I would consent to allow that claim, that defendant would pay the balance; and he urged me to do this, inasmuch as I could not force him to pay the bill. I told said Francis, that, if the defendant would pay me the balance in money, I would allow him the amount of his debt against Atkins. At that time, my information was, that the claim against said Atkins was about $120. The defendant came to see me very soon afterwards, to arrange the settlement as stated. He made no objection to the claim, but wanted to give his note for the balance, after deducting his claim against Atkins; but this I positively refused to do, telling him that I wanted the money—that I needed the money; that my only inducement to make the settlement was to get the money, and that I wanted it cash down." The defendant testified, in reference to this interview, as follows: "After the dissolution of said firm, hearing that plaintiff would not allow the debt of Atkins to Kent & Clarke in part payment of his claims, I sent Francis to him, to negotiate a settlement; and very soon afterwards, at the instance of Francis, I went to see plaintiff. I then proposed, that, if he would allow my account against Atkins, I would pay the balance in money. To this proposition the plaintiff agreed, and instructed Atkins, 'When Dr. Clarke pays the money, deduct the amount of your account, and settle with him, and receipt his account.' To the best of my recollection, the plaintiff did not say any thing about cash, or money down. I did not then know how much I owed said firm. Next morning, as Atkins was passing my office, I told him to make up a statement of my account, and bring it down, and I would settle with him. He agreed to do this, but never did." In March, or April, 1874, plaintiff notified defendant that he withdrew his consent to the proposed settlement, as it had not been complied

[Hurt v. Clarke.]

with according to his understanding of its terms; whereupon
defendant declared his readiness and willingness to settle,
but said that he had not been furnished with the plaintiff's
account.  A few days afterwards, the plaintiff sent one Ward
to the defendant, with the account, and with instructions to
collect it.  The defendant declared that he had always been
ready and willing to settle, but insisted on the allowance of
his account against Atkins as a credit; which Ward refused
to allow, as being contrary to his instructions.  The defend-
ant then paid Ward the difference between the two accounts,
$174.80, and Ward gave him a receipt for it as a partial pay-
ment on the plaintiff's account.

The plaintiff objected to the admission of all evidence as
to the agreement between Atkins and the defendant, because
the said agreement was not binding on him; and he reserved
several exceptions to other rulings of the court on questions
of evidence, which require no special notice.  He also re-
served exceptions to the refusal of several charges asked by
him in writing, among which were the following:

1. "A partner can not receive his individual debt, in pay-
ment of goods sold by him belonging to the firm; and if the
jury believe, from the evidence, that W. T. Atkins agreed to
sell the goods of his firm to the defendant, to pay his indi-
vidual debt to the defendant, without the knowledge and
consent of the plaintiff to such an arrangement, then the
agreement between said Atkins and the defendant is not
binding on the plaintiff, and is no defense to this action."

2. "Partners are the agents of each other, only in the part-
nership business; and can not, by such agency, bind the
partnership to pay the individual debts of the members of
the firm."

3. "The consent of plaintiff to receive the debt of Atkins
to Kent & Clarke, given after the creation of the debt sued
on, can not relate back to the previous agreement between
Atkins and the defendant, unless the plaintiff, at the time he
so consented to allow said debt in part payment, was in-
formed of the said agreement, and then and there ratified
the same."

4. "If the jury believe, from the evidence, that before the
payment in money made by the defendant on the 9th July,
1874, the plaintiff revoked his consent to allow the debt of
said Atkins to Kent & Clarke in part payment of the account
sued on, and so notified the defendant, such revocation put
an end to such consent, and the agreement to receive said
debt in part payment was thereafter inoperative, and is no
defense to this action."

The several rulings of the court on questions of evidence,

the refusal of the charges asked, and other matters, are now
assigned as error.

W. C. WARD, for appellant.—1. The agreement between
Atkins and defendant was made without the knowledge or
consent of plaintiff, and was not binding on him, unless sub-
sequently ratified.—*Pierce & Baldwin v. Pass & Co.*, 1 Por-
ter, 232; *Burwell & Clarke v. Springfield*, 15 Ala. 273; *Nall &
Brooks v. McIntyre*, 31 Ala. 532; 2 Brickell's Digest, 307–8,
§§ 120–22.

2. The proposal of plaintiff to allow the debt against At-
kins as a credit, or set-off, if defendant would pay the bal-
ance in money, was not a ratification of the unauthorized
agreement; and the proposal not having been accepted, and
complied with, plaintiff had a right to withdraw his consent.
*Walton v. Tims, Bigelow & Caldwell*, 7 Ala. 470; *Williams v.
Bramhall*, 13 Gray, 462.

JOHN WHITE, *contra.*—1. The contract between Atkins and
defendant was valid and binding on the partnership.—*White
v. Toles & Dunlap*, 7 Ala. 569; *Greely v. Wyeth*, 10 N. H. 15.

2. One partner is bound by an appropriation of the goods
of the firm to the individual debt of his copartner, if he
assents to it, either before or after it is done.—*McNeill v.
Reynolds*, 9 Ala. 313; *Woodward v. Winship*, 12 Pick. 430.
The plaintiff's proposal to allow the debt against Atkins as
a credit, was an assent and ratification of the contract under
which the goods were obtained by the defendant. The de-
fendant was entitled to a reasonable time for compliance and
performance, after acceptance; and the plaintiff can not take
advantage of his own failure to furnish his account for settle-
ment.—Addison on Contracts, 880, 1121–2; Chitty on Con-
tracts, 811; *Chapin v. Norton*, 6 McLean, 500; Brickell's Di-
gest, 397, § 281.

3. Atkins was placed in the community, during the plain-
tiff's absence, as the representative of the partnership, and
under such circumstances that he must, of necessity, subsist
out of the partnership business and assets. Those who dealt
with him, in good faith, under these circumstances, can not
be made to suffer loss on account of any supposed want of
authority on his part.—*Herbert v. Huie*, 1 Ala. 18; *Hunting-
ton v. Bank*, 3 Ala. 186; *Robertson v. Smith*, 18 Ala. 220–27.

BRICKELL, C. J.—It is a legal consequence of all mer-
cantile partnerships, that each partner is the general agent
of the firm, in all transactions within the scope of its busi-
ness. Within the range of its ordinary business, his acts

and engagements are as binding on the firm, as if all the members had united in them. Partnerships are formed for the common benefit of all the partners, not for the exclusive individual benefit of either partner; and contracts made by one, on his own account, for his own benefit, to the injury of the other partners, are without the scope of the partnership business, and without the range of the authority the law implies. They are not, consequently, binding on the firm, unless the other members authorize them, or subsequently ratify them. Each partner has an implied authority to make or indorse promissory notes in the name of, and binding on the firm, if they are made or indorsed for the benefit of the partnership, in the course of the partnership business. But neither partner can, for his own benefit, or for mere accommodation of a third person, by virtue of his general agency, make or indorse promissory notes in the name of the firm, which will bind it.—*Mauldin v. Br. Bank of Mobile*, 2 Ala. 502.

Each partner has an implied authority to dispose of the partnership property; but there is a well-defined limitation of the authority. The disposition must be on account, and for the benefit of the firm. A disposition on his own account, and for his own individual benefit, is without his authority, and, like the unauthorized act of other agents, is not valid against the firm. An appropriation of the partnership property to the payment of his individual debt, whether it is a pre-existing debt, or a debt contracted cotemporaneously with the appropriation, is as inoperative against the firm, as an executory contract by which he may attempt to bind the firm for the payment of such debt.—1 Amer. Lead. Cases, 557; Parsons on Part. 111; *Pierce & Baldwin v. Pass & Co.* 1 Port. 232; *Nall & Brooks v. McIntyre*, 31 Ala. 532; *Burwell & Clarke v. Springfield*, 15 Ala. 273.

In the present case, Clarke knew that the partnership existed between Hurt and Atkins, and that the goods Atkins proposed to sell him in satisfaction of the debt due from him, and the debt it was contemplated he would contract in the future, were the property of the partnership. The dealing was with Atkins on his own account, for his own benefit, and to the injury of the partnership. It may be that neither Atkins nor Clarke intended, or supposed it possible, that eventual loss would result to the partnership. Indemnity against loss, it was doubtless believed that Atkins would make, and be fully able to make, on the settlement of the partnership accounts. The risk of Atkins's solvency was thus transferred, or attempted to be transferred, from Clarke, his creditor, to the partnership, without their consent. One man can not, and ought not to be permitted, thus to dispose

of the property of another, without his consent. Atkins, with Clarke's knowledge, in the transaction we are considering, exceeded his authority, and violated the duty of his relation; and the agreement of Atkins is not binding on Hurt, unless it was ratified by him subsequently.

The case of *White v. Toles & Dunlap*, 7 Ala. 569, is wholly unlike the present case, and rests on its peculiar facts. The contract, in that case, was for work and labor to be done and performed by one of the partners, and to be paid for in board furnished him. The contract was made, the work done, and the board furnished, in ignorance of the existence of a partnership; while, in the case before us, it is apparent Clarke knew of the existence of the partnership, and that the goods to be sold him, and which were subsequently purchased, were the property of the partnership. The case is not distinguishable from that of *Pierce & Baldwin v. Pass & Co.*, *supra*.

2. It is insisted, however, that the proposition made by Hurt, when informed of the agreement between Clarke and Atkins, was an assent to, and ratification of it. It is certainly true, that if Hurt assented to the agreement, when informed of it, the assent has the effect on it which a previous authority to Atkins to make it would have had. It would become valid and binding on the partnership. But a mere offer by Hurt, to take the debt due from Atkins in part payment, if Clarke pay the remainder, until acted on by Clarke, by acceptance, and making payment according to its terms, would not operate as an assent to, or ratification of the unauthorized agreement. Yielding assent, or ratification of the agreement, was a voluntary, gratuitous act on the part of Hurt; and a proposition to assent or ratify is not distinguishable from a proposition to enter into a contract. Until Clarke accepted the proposition, and closed the transaction by a compliance with its terms, Hurt had the right of retraction; and if he did retract, the parties stood in the same condition, as if the proposition had not been made.—1 Chit. Con. 16; *Strong v. Catlin*, 35 Ala. 607.

The assignments of error are numerous, but it is unnecessary to notice them separately. Several of the rulings of the Circuit Court were not consistent with the views we have expressed, and what has been said will probably be decisive of the cause on another trial.

The judgment is reversed, and the cause is remanded.