# Wagner *v.* Simmons & Co.

### *Action on Bill of Exchange.*

1. *Rebutting examination; discretion of lower court as to.*—The general rule that a rebutting examination must be confined to the matters of the cross-examination, is not inflexible, but may be varied in the discretion of the presiding judge, according to the circumstances of the particular case ; and the appellate court will not interfere with the exercise of such discretion, unless it be very clear that the party complaining has been injured.

2. *Same.*—The mere repetition in rebuttal, of facts stated by the witness on his original examination, does not injure the party against whom his deposition was taken, and is not ground for reversal.

3. *Commercial partnership; what constitutes.*—A partnership in the business of buying cattle and slaughtering them for sale, and dealing in vegetables and like commodities, is a commercial partnership ; each member of which has the right to draw, accept, or endorse, bills of exchange in the firm name, and bind the partnership, as to third persons, dealing fairly and in good faith, as to matters usually incident to the business ; and it is immaterial in such a case, as to a person thus dealing with one of the partners, that the other was not informed of the transaction, and repudiated it as soon as it came to his knowledge.

4. *Charges, refusal of; when not revised.*—The refusal of charges requested will not be revised, unless it is affirmatively shown that such charges were requested in writing.

APPEAL from Mobile Circuit Court.

Tried before Hon. H. T. TOULMIN.

The appellees, as assignees of LeBaron & Son, brought suit against Louis Wagner and Charles Rawls, late partners under the style of Wagner & Rawls, upon an account due LeBaron & Son, and also to recover the amount due upon a draft drawn on the 14th day of October, 1874, by Wagner & Rawls on L. P. Wagner, payable to the order of LeBaron & Son, for one thousand dollars, which Wagner refused to accept, and which was duly protested, &c. Rawls was not served, and there was a discontinuance as to him. Wagner filed his sworn plea of *non est factum* as to the draft, and pleaded the general issue as to the account.

The appellees had taken the deposition of Rawls. After

[Wagner v. Simmons & Co.]

this deposition was taken, Wagner discovered a letter written to him by Rawls, and obtained leave to retake his deposition upon additional cross-interrogatories, asking if he wrote the letter, and the date thereof; a copy of the letter being made an exhibit. The plaintiffs then filed five additional interrogatories. The letter referred to, was in relation to the draft in suit, and stated that Rawls had borrowed the money on his own account, and had made it all right, as it was a matter that " you [Wagner] and the business have nothing to do with." The additional interrogatories thus filed, inquired whether the firm did not get the benefit of the money on the draft; whether LeBaron & Son agreed to look to Rawls, or advanced the money on the credit of the firm; whether the facts stated in the witness' first deposition were not true, and required the witness to state the circumstances under which the letter was written. The substance of these matters had already been inquired of on the interrogatories propounded to the witness, and answered by him in his deposition, except as regarded the letter.

At the time of the filing of these interrogatories, Wagner objected to each of them, with the exception of those relating to the letter, on the ground that the interrogatories were leading.

Before entering on the trial, the defendant moved to suppress all that part of the deposition of Rawls which had no reference to the letter; basing the motion upon the grounds of objection filed to the interrogatories. The court overruled this motion, and the defendant excepted.

Rawls & Wagner formed their partnership in January, 1874, and it continued until April 16th, 1875, during which period they carried on the business of butchers and green grocers, in Pensacola, Florida. Their principal trade was in supplying vessels in the harbor with cattle, sheep, vegetables, &c. Rawls resided in Pensacola and had charge of the business, while Wagner was seldom there, being principally in New Orleans and Mobile, where he bought and forwarded cattle and vegetables to Rawls to be disposed of for the firm account. The sales of the firm amounted to as much as $18,000 per annum. As soon as Wagner learned of the draft, he refused to pay it, and repudiated Rawls' authority to draw it. He testified that Rawls had no authority to borrow money, and that he, Wagner, never knew that Rawls kept any account in the firm name; that there was no necessity for Rawls to borrow money, as he, Wagner, bought supplies and sent them to Rawls, whose duty it was to sell

[Wagner v. Simmons & Co.]

them and remit the proceeds to him, Wagner. The evidence shows that the draft was drawn to make good the account of the firm which Rawls kept with LeBaron & Co., who had allowed Rawls to overdraw to that amount on account of the firm and on its credit. LeBaron & Co. were bankers and commission merchants in Pensacola, and it is not shown that they had any notice of any limitations in the partnership articles, or knew of the letter of Rawls to Wagner, until after this suit was brought. The plaintiffs' ownership of the draft was admitted. This was substantially all the evidence.

The court charged the jury, among other things, " if they believed from the evidence that Wagner was a member of the firm of Wagner & Rawls at the time the bill of exchange sued on was drawn, and that it was drawn by said Rawls as one of the firm, then they must find for the plaintiffs on the count on the bill of exchange, and in case they found for the plaintiffs, they were entitled to recover the amount of the bill, and interest from the time it was protested, with five per cent. damages on the amount of the bill." The defendant duly excepted to this charge. He also asked two charges, which the court refused; to which refusal he duly excepted. It does not appear that these charges were asked in writing.

The charge given, the refusal to charge as requested, and the ruling upon the deposition of Rawls, are now assigned as error.

BOYLES & OVERALL, for appellant.—The business in which Rawls & Wagner engaged, did not authorize the partners to draw bills of exchange and bind the firm.—6 Ala. 94; 34 Ala. 613. Where one person borrows money on his individual credit, and applies it to the use of the firm, this does not make the original creditor a creditor of the firm, unless the money is applied with the knowledge and privity of his partner.—35 Barbour 120. This was not a *commercial partnership*.—57 Pa. State, 531. It was an abuse of discretion to allow these parties to put leading questions to their own witness.

ANDERSON & BOND, *contra*.—Under the issue, the only question was as to the authority to draw the bill. There can be no doubt on this point.—*Jemison v. Dearing*, 41 Ala. 283. The charge of the court when construed in connection with the evidence and the issue joined, was clearly correct. 41 Ala. 413; 22 Ala. 221; 41 Ala. 283; 8 Ala. 59; 7 Ala.

(10)

19.   It was clearly within the discretion of the court to per-
mit a leading question, or to allow a witness to repeat what
he had already testified.   The letter which Rawls wrote
Wagner was not known to LeBaron & Co. at the time of
the transaction, neither were the terms of the partnership
articles, and of course could not affect LeBaron & Co.'s rights
or those claiming under them.   It was not attempted to be
shown that either of these matters were known to LeBaron &
Co. in their dealings with Rawls.   As to the other charges,
which were refused, it does not affirmatively appear that
they were asked in writing.—*Crosby v. Hutchinson*, 53
Ala. 5.

BRICKELL, C. J.—The general rule, that a rebutting
examination should be confined to the matter of the cross-
examination, is not inflexible.   Its application, rests largely
in the discretion of the presiding judge, with the exercise of
which appellate tribunals are reluctant to interfere, unless it
is apparent injury has been suffered by the party complain-
ing.   We do not perceive that the appellant could have been
injured by the mere repetition by the witness in rebuttal, of
the facts stated by him in his original examination.   The
court may also in its discretion, permit a party to propound
a leading question to his own witness; and the exercise of
this discretion can be rarely revised on error.   We are
unwilling to pronounce that the court erred in overruling
the objections to the evidence of the witness Rawls.

2.   Nor is the charge of the court to which an exception
was taken objectionable.   It is a legal consequence of every
commercial partnership—every partnership engaged in buy-
ing, selling or exchanging—that each partner is the general
agent of the firm, and has power to act for, and bind it, in
all matters within the scope of the partnership business.
And it is within the scope of such business, to borrow money,
to draw, accept, or endorse bills of exchange or promissory
notes.   These are the means of conducting such business,
common alike to the butcher and green grocer, and the more
extensive dealer in dry goods or groceries, or to the factor,
broker or banker.   Whoever associates with another for the
purpose of carrying on trade, confers on him as to third per-
sons, who are not notified to the contrary, and who deal with
him fairly and in good faith, authority to bind the partner-
ship by contracts or engagements which are usually incident
to the particular business in which they are engaged.—1 Am.
Lead. Cases, 442; *Hart v. Clark*, 56 Ala. 19.   The bill of

exchange on which the suit is founded, was drawn for money borrowed by Rawls, in the partnership name. He had authority to borrow money for the partnership, and to draw the bill in the firm name. It is not material that the appellant had no knowledge of the transaction, and so soon as informed, repudiated it. The parties loaning the money to Rawls, and accepting from him the bill, had the right to rely on his power to bind the partnership.

There can be no reversal of a judgment, because of the refusal of charges requested, unless it is shown affirmatively by the bill of exceptions, that they were requested in writing.—*Crosby v. Hutchinson*, 53 Ala. 5; *Hollingsworth v. Chapman*, 54 Ala. 7.

Affirmed.