EADY *v.* NEWTON COAL AND LUMBER COMPANY.

1. An agreement between a customer and a member of a partnership, that its. goods may be purchased and paid for by the customer in commodities, furnished by him for the private use and benefit of such member of the firm, is void, as being beyond the scope of the partner's apparent authority. So much of the decision in *Perry* v. *Butt*, 14 *Ga.* 699, as is in conflict with the above is, upon a formal review, overruled.

2. Articles of partnership may be enlarged by implication from a general usage and habit of the firm, acquiesced in by all of the partners. But before such a custom would become binding upon a partner who did not expressly authorize it, the circumstances would have to be such as to indicate that he not only knew of the course of dealing in particular instances, but contemplated and tacitly assented to a regular course of dealing with the public, rather than a departure from the partnership articles in the excepted cases.

Submitted May 17, — Resubmitted July 5, — Decided August 1, 1905.

Complaint. Before Judge Hammond. City court of Griffin. January 2, 1905.

A partnership was formed in 1893 or 1894, under the firm name of H. P. Eady & Co., between H. P. Eady and J. A. Brooks, for the purpose of engaging in the wagon and buggy business and conducting a blacksmith and general repair shop. Brooks had charge of the books and looked after the office affairs of the firm, while Eady assumed the management of the shop. Shortly after the partnership was formed, Brooks approached J. M. Mills, manager of the Newton Coal & Lumber Company, and solicited the business of that concern, proposing to Mills that if he would give the patronage of his company to Eady & Co., the individual ac-

counts of its members for supplies purchased from his company would be allowed as a credit on such account as he might run with the partnership, and that they would in this manner "swap" accounts. Mills assented to this arrangement, and Brooks afterwards purchased from the Newton Coal & Lumber Company supplies for his individual use to the amount of $113.51, and supplies for his firm to the amount of $59.02. In January, 1898, Mills and Brooks effected a settlement of accounts, which included the individual indebtedness of the latter. Brooks made no entry of this settlement on the books of his firm, and his partner had no knowledge thereof or of the arrangement under which it was made. In June, 1902, Brooks effected another settlement with a representative of the Newton Coal & Lumber Company, whereby an account of $19.36 against Eady & Co. and an account against Brooks of $121.44 were satisfied. Eady was not present and took no part in this settlement, and the transaction was not entered on the books of his firm, nor did Brooks charge his individual account with the amount which he received thereunder. In April, 1903, the partnership was dissolved, and Eady became the sole proprietor of the business. Brooks was at the time hopelessly insolvent. On December 5, 1904, Eady, as the successor of the firm and as transferee of the accounts which it held against its debtors, brought suit against the Newton Coal & Lumber Company and the individuals who conducted business under that firm name, to recover $200.80 on an open account claimed to be due by it to Eady & Co. The defendants filed an answer in which they admitted an indebtedness of $16.65, but by special plea they set up the agreement made between the manager of the Newton Coal & Lumber Company and Brooks, one of the members of the firm of Eady & Co., and the settlement of the accounts made in pursuance of that agreement. The defendants alleged that Brooks was authorized to enter into this agreement; that it was made in the usual course of dealings which had prevailed for a number of years, with the knowledge and approval of all of the members of the two partnerships; and that the settlement of accounts was made with the knowledge and consent of Eady and in accordance with the custom recognized and followed by his firm in settling accounts between it and other firms in Griffin with which it transacted business.

On the trial of the case Brooks testified that he had no direct authority from Eady to enter into the agreement made with the manager of the Newton Coal & Lumber Company, but that Eady had knowledge that settlements of the character made with that company were effected with parties with whom his firm had business dealings, and that he never raised any objections to settlements being made which included the individual accounts of its members. Eady testified that he never authorized any such agreement, had no knowledge that it was entered into, and never consented to any settlement in accordance with its terms. As to transactions with other firms in Griffin, he explained that on certain occasions he had consented that, when parties called for a settlement of accounts, the indebtedness of the members of his firm should be entered as a credit on the demands which his firm had against such parties; but that in each instance the account against him individually had been presented to him, he had marked it " O. K.," and he and his partner had agreed that the settlement. with the firm should embrace an allowance of the indebtedness held by its debtor against them individually. He denied that he had ever conferred upon Brooks any authority to make any such settlement without his express assent and approval. A number of merchants testified to having made settlements with the firm of Eady & Co., in which demands against the members of that firm were allowed. In some instances Eady was present and consented to this arrangement; in other instances the settlement was made with Brooks in the absence of Eady. Only one of the transactions of this nature which was made by Brooks without the express consent of his partner appeared on the books of the firm, and Eady undertook to swear positively that the entry thereof was made after the firm was' dissolved, by changing a former entry of $2.75 to $580.95, and that he had no knowledge of this transaction till after he had become the sole owner of the business. After the dissolution of the partnership, Eady repudiated the agreement entered into between Brooks and the manager of the Newton Coal & Lumber Company, saying he had no information in regard to it and that the company would have to look to Brooks for the payment of his individual indebtedness to it. The defendants sought to show that Eady, in point of fact, knew of and tacitly assented to that

agreement; but the only evidence adduced on this point was to the following effect: After this arrangement was agreed on between Brooks and Mills, the latter was asked by Eady if he "didn't want a wagon." Mills replied, "You don't owe us quite enough to get a wagon yet," and Eady then said, "We will owe you enough." Subsequently Eady & Co. wanted to buy a car-load of coal. Mills went to the office of the firm, and in the presence of both members said that coal was sold at a very small profit and that he could not charge it — that he "could not swap accounts as to this." They accordingly paid cash for the coal, giving him a check for the price of it, and Eady took part of the car-load, Brooks part of it, and a part of it was devoted to the use of the firm. Several bookkeepers, who had at different times been in the employ of the firm, knew of the custom of settling the individual indebtedness of its members when settlements were effected between the firm and other business concerns, and they were under the impression that Eady knew of this practice, as he looked pretty closely after the business.

After both sides had announced closed, the court, on motion of the defendants, directed the jury to return a verdict for only the amount which they admitted to be due, $16.65, holding that the plaintiff was not entitled, under the evidence, to recover the amount sued for. To the direction of this verdict exception is taken. Complaint is also made that the court admitted, over the plaintiff's objection, evidence as to the making of the agreement under which Brooks settled his individual indebtedness to the Newton Coal & Lumber Company, and as to the general custom of the firm of Eady & Co. to make, with persons with whom it dealt, settlements of the character effected by Brooks with the defendant partnership.

*Robert T. Daniel* and *Marcus W. Beck*, for plaintiff.
*Lloyd Cleveland*, for defendant.

EVANS, J. (After stating the facts.)   1. Counsel for the defendant in error insists that the agreement between Brooks and the manager of the Newton Coal & Lumber Company was an engagement in furtherance of the partnership business, which Brooks had the right to make and by which his copartner is bound. This proposition is claimed to be supported by the case of *Perry* v. *Butt*, 14 *Ga.* 699. The report of that case discloses

that the partnership concern did a cash and credit business and bartered goods for other articles. The defendant was a tavern-keeper, and, in a conversation with one of the partners upon the subject of boarding, said that when merchants or their clerks boarded with him, it was his custom to trade it out, and that he did not expect cash. It was the understanding that the tavern-keeper's charge for the board of one of the partners was to be allowed for any goods he might buy of the firm; the tavern-keeper had twice settled his account with the firm for goods purchased prior to the time the note in suit had been given, and in each settlement the partner's board had been allowed as a credit. These settlements were duly entered on the books of the firm. Upon these facts, the great judge who delivered the opinion of the court said that one partner, in furtherance of the joint business, may agree with a hotel-keeper that if he will deal with the firm, his account shall be settled by the board of the partners, and the contract will be binding on the firm. It is perfectly clear and manifest from the entire report of the case that the court did not intend to hold that one partner could sell the firm's goods for his private benefit. Otherwise it would have been entirely useless for the court to discuss ratification because of prior entries on the books. And to make it more clear that such was not the intent is the express recognition of the principle that one partner can not appropriate the partnership effects in payment of his individual debt. Still, as the language used is susceptible of the construction placed upon it by counsel for the defendant in error, leave was granted to review the ruling announced in the fifth division of the opinion filed in that case. We think the true rule of liability is well stated in Worder *v.* Newdigate, 11 B. Mon. (Ky.) 177: " If a firm sells goods and receives various commodities in payment, the act of one partner in relation thereto binds the firm, because it is in the course of its trade and done in the name and for the benefit of the partnership. But when goods are purchased to be paid for in commodities furnished, not for the firm, but for one of the partners individually, and this fact is known to the purchaser, the act of one partner in such a case does not bind his copartners unless they assent to it." To bind the partnership it is essential that a contract of this character be made not only in the name of the firm, but at least ostensibly

36

for the firm's benefit.    Otherwise it will not be binding on the partnership.    One of the reasons advanced why such a contract would be binding on the copartners is that a partner has a right to accept specifics in payment of the goods of the firm, and when firm goods are sold under a contract to be paid for in specifics for the individual use of one of the partners, and the goods are paid for in this way, a suit in the firm name to recover the value of the goods is not maintainable, because the goods have been paid for in terms of the contract under which they were purchased.    Fay v. Green, 1 Aik. 71; Strong v. Fish, 13 Vt. 277; M'Kee v. Stroup, Rice, 291; White v. Toles, 7 Ala. 569 (overruled in Cannon v. Lindsey, 85 Ala. 198).    The fallacy of this argument is that the truth of the premise is assumed.    The goods have never been paid for; the firm has never received any quid pro quo from the customer.    As was said in Thomas v. Pennrich, 28 Ohio St. 55:  "The assumption is true if the setting off of a debt due the firm against the private debt of the partner is a payment of that debt.    But it is conceded that a partner can not pay his own debt by using the firm property to that end."  Other cases are based on the observation of Lord Ellenborough in Henderson v. Wild, 2 Campb. 561, to the effect that a receipt by one of the partners discharging the firm debtor in consideration of the settlement of a private debt of the partner executing the receipt is binding on the firm.    Halls v. Coe, 4 McCord, 136. But this doctrine is repudiated by the great weight of authority, and recognition is given to the principle that one member of a partnership has no implied authority to dispose of property of the partnership in satisfaction of his individual debt or for his individual benefit.    Bank v. Rice, 48 Neb. 428; Evernghim v. Ensworth, 7 Wend. 326; Thomas v. Pennrich, 28 Ohio St. 55; Minor v. Gan, 11 Sm. & Mar. 322; Flower v. Williams, 1 La. 22; Atkin v. Berry, 1 Tenn. 91; Thomas v. Stetson, 62 Ia. 537; Dob v. Halsey, 16 Johns. 34; Cotzhausen v. Judd, 63 Wis. 213; Chase v. Buhl Iron Works, 55 Mich. 139; Brooks v. Carpenter (Ky.), 53 N. W. Rep. 40; Taylor v. Rasch, 23 Fed. Cas. 789; McNair v. White, 46 Ill. 211; Bell v. Faber, 1 Grant, 30; Gullatt v. Tucker, 2 Cranch C. C. 33.

Several American courts have followed the English case of Jones' Assignee v. Yates, 9 B. & C. 532, assigning as the reason

why a partnership could not sue for the value of goods sold by one of the partners to a customer, under an executed agreement that the goods were to be paid for by delivery of specifics to the partner's private use, that it would allow a plaintiff in a court of law to rescind his own act on the ground that such act was a fraud on some other person. · Greely v. Wyeth, 10 N. H. 15; Homer v. Wood, 11 Cush. 62; Craig v. Hulschizer, 34 N. J. Law, 363. As was clearly demonstrated in Purdy v. Powers, 6 Pa. St. 494, "this action does not proceed upon a suggestion of mala fides or imputed fraud in one of the parties, but upon the foot of the original claim, springing from the debt contracted with the firm in the usual course of dealing, and there is nothing standing in the way of the action which requires to be rescinded." An agreement between one partner and a purchaser to sell partnership goods and receive in exchange therefor commodities to be applied to the private benefit of the individual partner is a void act, in that it is beyond the scope of the authority of a partner to make such an agreement, and the very nature of the agreement informs the purchaser that the firm is parting with its property and receiving nothing in exchange. A private agreement by one partner for his separate advantage would work a great injury to partnership assets, and thereby to associates in the firm and the creditors of it. Several cases upon practically the same facts as are involved in the case under consideration have been before the courts, and a brief reference to some of them may aid in illustrating our position. In Brickett v. Downs, 163 Mass. 70, Brickett and Shorey were coal dealers, and the defendant was a dentist. The suit was for the price of coal, and the defendant pleaded that Shorey was having teeth fixed in the defendant's office, and proposed that defendant take coal in part payment for dental work done and to be done for Shorey and his family, and to this proposition the defendant assented. At that time Shorey owed defendant from $23 to $27, and defendant soon afterwards did work that increased the bill to $38.75. He had received the coal in part payment of his bill for dental work. Knowlton, J., said: "To receive property of a partnership from one of the partners in payment of his personal debt, without the consent of his copartner, is no less a fraud upon the partnership than to pay a debt due the firm by doing or furnishing something for the

personal benefit of one of its members. Such an arrangement accompanying the receipt of partnership property would be void against the other partner, and would leave the party receiving the property liable on an implied contract to pay the firm its value." In North Carolina it was held that in an action by a surviving partner for a debt alleged to be due to the firm, the defendant can not avail herself of a debt due to her by a deceased member of the firm, though the contract between the latter and the defendant was that the debt, which was for the board of this partner, should be paid out of the store in which the plaintiff and the defendant's debtor were partners. Norment v. Johnston, 10 N. C. 89. In Goode v. McCartney, 10 Tex. 193, the plaintiff brought suit upon an account for merchandise sold the defendant. The latter pleaded in set-off an account for medical services rendered a partner of the plaintiff, who had furnished the goods under an agreement that the medical services rendered him by the defendant should be received in satisfaction. The court held that such an agreement between the customer and one of the partners did not bind the copartners; and the plaintiff was allowed to recover. To the same effect is Pierce v. Pass, 1 Porter, 232.

It has frequently been held that while a partner may apply partnership property to the payment of a partnership debt contracted in the prosecution of the partnership enterprise, he has neither a legal nor a moral right to appropriate partnership effects to the payment of his individual debt, without the assent of his partner. *Wise* v. *Copley*, 36 *Ga.* 508; *Harper* v. *Wrigley*, 48 *Ga.* 495; *Murphey* v. *Bush*, 122 *Ga.* 715. There can be no distinction in reason between the payment of a private debt with partnership assets and the delivery of partnership goods to one who engages to do or to give something in exchange for the exclusive benefit of one of the partners. In either instance the transaction amounts to a conversion of partnership property to the private use of one of the partners, with the knowledge of the person who receives the firm's property. Hence we conclude that an agreement between a customer and a member of a partnership that its goods may be purchased and paid for by the customer in commodities furnished by him for the benefit of such member of the firm is neither in furtherance of the partnership business nor within the scope of his apparent authority. See Parsons on Part-

nership, § 90, and cases cited. In so far as the decision rendered in *Perry* v. *Butt*, supra, conflicts with the views above announced, that decision is formally overruled. We are not constrained to follow the early English decisions hereinbefore referred to, as they were pronounced subsequently to the period mentioned in our "adopting statute" as the period to be looked to in ascertaining what was the common law as understood and declared by the courts of England prior to the Revolution.

2. During the course of his examination as a witness, Brooks was permitted to testify as to the custom of his firm with reference to making settlements with its customers which embraced accounts held by them against its members as individuals. This testimony was admissible, as the witness undertook to swear that his partner had knowledge of the custom which prevailed and raised no objection thereto. It is pertinent to remark, however, that before such a custom or business usage would become binding upon a partner who did not expressly sanction or authorize it, the circumstances would have to be such as to indicate that he not only knew of settlements being made in particular instances in accordance with the custom, but contemplated and tacitly assented to a regular course of dealing with the public rather than with a few customers who held small demands against the individuals composing the firm. The mere fact that in two or more isolated instances he agreed to a settlement whereby the customer was given credit for a private debt against his copartner would not suffice to establish his assent to a practice so general as to amount to a custom. It would have to appear that there was a general usage or habit of so conducting the affairs of the firm, acquiesced in by all of its members. 1 Bates on Partnership, § 319. In a case where a partnership had frequently drawn checks against its funds in bank for the purpose of paying the individual debts of its members, this court held there was not sufficient proof of such "a course of dealing" as would justify the bank in assuming that it was within the scope of the partnership business to pledge its credit and give its promissory note in satisfaction of a debt due by one of the partners to the bank. *Peoples Savings Bank* v. *Smith*, 114 *Ga.* 185. A customer has no right to assume that because a partner expressly assents on one occasion to the allowance of a set-off of a demand for a particular amount held against his co-

partner, a like assent will be given to a similar settlement on another occasion, or that his copartner has any authority to bind the firm by any promise to settle its accounts in this manner.

What is said above disposes of all the questions which the record before us presents for determination. The next trial of the case should be conducted in accordance with the rulings above announced.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*