B. A. WISE, plaintiff in error, *vs.* COPLEY, STONE & CO., for the use of W. L. LECONTE, defendant in error.

A. J. RIDDLE, plaintiff in error, *vs.* THE SAME, defendant in error.

A creditor of an individual member of a mercantile firm, who purchases goods of such individual member, at his solicitation, knowing the goods so purchased to be copartnership property, which goods were charged to the purchaser on the copartnership books—cannot, in a suit instituted by the copartnership or their assignee for the value of the goods, plead payment, or a set-off thereto, the indebtedness of such individual partner, in bar of the plaintiff's right to recover, in such suit. The sale by one partner of the copartnership effects in payment of his *individual* debt, is not binding upon the other partners, without their knowledge and assent thereto *be clearly and distinctly proved.*

*Certioraris* from the Justices' Court. Decided by Judge COLE. Bibb Superior Court. November Term, 1867.

F. H. Stone owed Wise $53.35, and afterwards formed a partnership with W. S. Copley and W. L. LeConte, as merchants, under the style of Copley, Stone & Co.

Wise presented his account against Stone to him, at the store of the firm, and Stone asked him to trade out the amount in the store. Wise agreed to do so, and received at different times, in the usual course of trade, goods worth $35, out of said store and from the goods which Wise knew belonged to the firm.

Stone charged the goods to Wise on the firm books, but

Wise did not know this at the time; he supposed Stone would keep an account of the goods as they were delivered, but did not know whether Stone would charge them on the firm books to himself or to Wise.

The other partners were absent when this arrangement was made, and knew nothing about it; but Wise did not then know whether they knew it or not.

Afterwards the firm dissolved, being in debt to LeConte and other outside creditors. All of their assets and the book accounts were assigned to LeConte to pay first the outside creditors and then himself. LeConte paid the outside creditors, all except about $10.

In the name of the firm for his use, he sued Wise for said goods. Wise plead payment.

Besides the foregoing facts, it also appeared that Wise did not credit his account on Stone with the goods received by him from the firm's store, nor on his books, nor by giving a receipt.

The facts in Riddle's case are as follows:

After the firm was formed, Riddle did work for Copley worth $34, and for Stone worth $14, and went to the firm's store to collect his bills.

Copley asked Riddle to trade out the bill in their store, saying they were young merchants needing money, &c. Stone was sitting in the window, and Riddle then thought he heard what Copley said. To accommodate them he consented to trade out both bills, and accordingly from the 11th of May to the 16th of August, 1866, he obtained from Copley, Stone & Co., groceries worth $43.47. He had not before traded with them, and took these goods at Copley's solicitation, believing Stone was a party to the transaction.

He did not know, nor did he consider, whether the goods would be charged on the firm books to him or to Copley and Stone. He usually bought for cash, and did not make accounts. His said bills were never paid except by the receipt of said goods.

He did not know, when the arrangement was made nor when he got the goods, that LeConte disapproved of the ar-

rangement, nor did he know LeConte; he knew a man by that name belonged to the firm. But LeConte was a member of the firm, so advertised in the daily newspapers of Macon and by placards in the store.

The books of the firm contained an account against each of its members, but the goods gotten by Riddle were charged to him and not to Copley or Stone. Riddle never credited Copley's or Stone's accounts with the goods received, nor receipted either of them for the same; he kept no books.

LeConte was never informed of this arrangement while the partnership lasted, and never assented to it. He sued Riddle on said account, in the firm's name for his use, and Riddle plead payment, and showed the dissolution and assignment as in Wise's case.

The cases were pending in the Justices' Court, and upon the foregoing facts, judgments were rendered against each of said defendants for the amount of his account and costs.

Each sued out *certiorari*. By consent they were argued together in the Court below, and the *certioraris* were dismissed because the Judge thought the judgments right under the facts aforesaid. And now (in one bill of exceptions) this Court is asked to reverse said decision.

BACON & SIMMONS, E. F. BEST, for plaintiff in error.

LANIER & ANDERSON, for defendants in error.

WARNER, C. J.

The only question presented by the record in this case is, whether a creditor who holds a demand against an individual member of a mercantile firm, purchases the copartnership goods from that individual member of the firm, knowing the same to be copartnership property, can, in an action brought against him by the partners or their assignee for the value of the goods so purchased, plead that demand, either as payment, or as a set-off against the copartners or their assignee. The goods were purchased of one of the copartners at his solicitation, by the creditor of the individual partner, and

were charged to the purchaser on the copartnership books. It is a well settled rule, that one partner cannot dispose of the copartnership property in payment of his *individual* debt, without the *assent* of his copartners, either express or by necessary implication. In order to create the implied assent of the other partners to such a transaction, the evidence should be clear and satisfactory, which the evidence in this record does not establish. It is true, that each partner is the agent of his copartners when acting *within the scope* of the copartnership business; but it is not true that one individual partner has either the legal or moral right to appropriate the copartnership effects to the payment of his individual debts, *without the assent* of his copartners. Such assent should be established by clear, indubitable evidence, in order to bind the other copartners. To establish the rule as contended for by the plaintiff in error in this case, would be a dangerous and mischievous precedent, and contrary to the decision of this Court in Harlow vs. Rosser, Scurry & Co., 28th Ga. Rep., 219. See also the case of Dob. vs. Halsey, 16th John. Rep., 34.

Let the judgment of the Court below be affirmed.