GEORGE CHAPMAN v. GEORGE REMINGTON, IMPLEADED WITH SAMUEL P. CROSS AND W. W. WENBAN.

*Bills and notes—Good-faith holder—Consideration—Public policy— Township treasurer—Taxes—Payment.*

1. A note taken by a township treasurer in his own name, on the sale of property for taxes, is void in his hands on the ground of public policy. *Turnbull v. Township of Alpena*, 74 Mich. 621.

2. The failure of the holder of township drain orders, on exchanging them with the township treasurer for a note held by him in his individual name (which note was taken by the treasurer on the sale of property for taxes, but of which fact the holder of the orders was ignorant), to make inquiry as to how the treasurer obtained the note, is no evidence of bad faith.

3. A promissory note in the usual form, with nothing written upon it indicating that it was taken in an illegal transaction, is "fair upon its face."

4. The consideration paid for a promissory note need not be in money, in order to have the note come to the purchaser in due course of business.

   So *held*, where a book-keeper in a bank exchanged township drain orders for a promissory note held by the township treasurer.

Error to Van Buren. (Buck, J.) Argued April 30, 1890. Decided May 9, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Mills, Osborn & Goss*, for appellant, contended:

1. The note was void in its inception; citing *Doran v. Phillips*, 47 Mich. 228; *Turnbull v. Township of Alpena*, 74 Id. 621.

2. The drain.tax was void, and the treasurer had no warrant for its collection. The sale was not, therefore, a tax sale, and the doctrine of *caveat emptor* has no application. The property might have been replevied as soon as seized; citing Wells, Repl. §§ 236, 237.

3. It is urged that it is no matter to defendant what plaintiff paid for the note. Such is not the law where the original consideration has failed, was illegal, or the note has been diverted to a purpose different from that for which it was intended; citing Rand. Com. Pap. §§ 452, 994.

4. The note being void as between Remington and the town treasurer, plaintiff can recover no more than he actually paid; citing 1 Dan. Neg. Inst. § 757; 1 Edw. Bills, § 518.

5. The presumption of law is that the note was void in plaintiff's hands; citing *Paton v. Coit*, 5 Mich. 505; *Peabody v. McAvoy*, 23 Id. 526; *Conley v. Winsor*, 41 Id. 253; *Bank v. Seymour*, 64 Id. 59; and without proof of the *bona fides* of his purchase plaintiff would be non-suited; citing *Holden v. Cosgrove*, 12 Gray, 216; *Cottle v. Cleaves*, 70 Me. 256; *Clark v. Pease*, 41 N. H. 414.

6. The law throws no shield around municipal orders, nor are they negotiable in the sense of cutting off defenses. The purchaser takes *them* at his peril; citing *Miner v. Vedder*, 66 Mich. 101; *Bank v. Willow Lake School Tp.*, 44 N. W. Rep. 1002.

7. Plaintiff having purchased the note in an agreement contrary to public policy, he has no title on which to sue; citing *Lloyd v. Keach*, 2 Conn. 175; *Newman v. Williams*, 29 Miss. 212; *Sproule v. Merrill*, 29 Me. 260; *Ward v. Doane*, 77 Mich. 328.

*Boudeman & Adams,* for plaintiff, contended for the doctrine stated in the opinion.

LONG, J. In the year 1888 the drain commissioner laid out and constructed in Geneva township, Van Buren county, a public drain called the "Three Mile Creek Drain." The costs of construction were laid, two-thirds upon the parties benefited, and one-third upon the township of Geneva. The costs of such construction amounted to something over $500. Among others who were assessed

for such drain was one James Stewart, whose assessment amounted to $183.

For the purpose of paying the contractors and others for the work on the drain, the drain commissioner issued certain drain orders, payable out of that fund on February 1, 1889. The tax was assessed by the supervisor in his assessment roll for the year 1888, and became due and payable in January, 1889. James Stewart refused to pay his tax, and the township treasurer, having the tax roll in his possession, levied thereunder upon certain of Mr. Stewart's personal property, and advertised and sold it at public vendue. The sale was made on January 28, 1889, and the defendant Remington became the purchaser, and gave to Mr. Wenban, township treasurer, the defendant impleaded here, his promissory note indorsed by Samuel P. Cross for the amount of his bid, $191.58.

It appears that the plaintiff was the book-keeper in the West Michigan Savings Bank at Bangor, and on January 18, 1889, held and owned about $149 worth of these orders, and the bank also held for collection an order of $38.12, all drawn by the drain commissioner on this fund. On that day the plaintiff wrote to Mr. Wenban, and asked if he could pay them if he should send them up. These orders were all payable on February 1, 1889. It also appears that Mr. Wenban on January 29, 1889, went to Bangor, and to the bank there, saw the plaintiff, presented the note of Mr. Remington so indorsed by Mr. Cross, and asked the plaintiff if it was good. The plaintiff says·

"I looked it over carefully, and said: 'Yes, it is good.' I knew George Remington and Samuel P. Cross, and always supposed them pecuniarily responsible. They did business at the bank, and were my neighbors; one of them, Mr. Remington, living next door to where I reside. I knew James Stewart, and I had heard previous to that that he was having some difficulty with reference to his

drain taxes, but I had not heard until after I got the note that any of his property had been sold for drain taxes. Mr. Wenban, after these inquiries, said to me: 'If you can use that note, I will take all the orders you have got against our town.'"

An arrangement was then made between the plaintiff and Mr. Wenban by which the plaintiff took the Remington note, so indorsed by Cross, and Mr. Wenban then also indorsed it, in exchange for the drain orders so held by plaintiff, as well as the order of $38.12, which was owned by Mr. James D. Ferguson. The plaintiff credited Mr. Ferguson for this amount upon the books of the bank, and charged his account with it.

This action is brought against Remington, Cross, and Wenban on this note. On the trial in the court below the plaintiff had verdict and judgment. Defendant Remington brings error. The claim made upon the trial in the court below was that the tax roll held by the township treasurer had no warrant attached, and that all the proceedings for the enforcement of the tax against Stewart were void. It was also claimed that the treasurer of the township, Mr. Wenban, had no lawful authority to take the note of Mr. Remington on the sale of the property of Mr. Stewart for this tax, and that therefore the note was void in the hands of Mr. Wenban on the ground of public policy. It is also contended here that, the note being void on the ground of public policy, the plaintiff could not stand in relation to it as a *bona fide* purchaser. The court below advised the jury that the Stewart tax was void, and the treasurer had no right to proceed to its collection. The court also instructed the jury that the note was void in the hands of Mr. Wenban, and that he could not have maintained an action thereon to enforce its collection. This instruction was correct under the ruling of this Court in *Doran v. Phillips,* 47 Mich. 228, and *Turnbull v. Township of Alpena,* 74 Id. 621.

The defendant, however, is not complaining of this ruling, but insists that the court should have gone further, and held that the note was also void in the hands of the plaintiff, and that the transfer to him under the circumstances was a transaction in violation of law, so that the note had no binding force in his hands, and upon which he could not maintain his action. Upon this point the court instructed the jury as follows:

"The plaintiff, as I have said, claims to be a *bona fide* holder of this note. If you find the fact to be proven that he bought this note at the time he claims to have bought it, before it was due, that he paid value for it, and that he had at that time no knowledge and no notice that this note had a defense such as is here set up, then he is entitled to recover against the defendant, and the fact that it was void between the other parties could cut no figure in your deliberations, and you should render a verdict for the plaintiff."

It is claimed that this was error, for the reason that the plaintiff did not get the note in the ordinary course of business, but received it in exchange for drain orders which were void, and that he got it from an officer whose duty it was to pay the orders, if they were valid, from the funds in his hands for that purpose. It is also insisted that one of the orders turned out in the exchange did not belong to the plaintiff, and that the court omitted to state to the jury one important element of the relation of *bona fide* holder; that is, that he must have purchased in good faith. Several other suggestions are made by counsel for defendant why the plaintiff did not stand in the position of a *bona fide* holder for value, which we do not deem it material to notice.

The situation of the parties at the time of the transaction by which plaintiff became possessed of the note was, as appears from the record, that plaintiff held and owned drain orders to the amount of about $149, and also had one of Mr. Ferguson for collection of $38 and a little

over. He had written to the township treasurer about their payment, and he had heard that Mr. Stewart was having some difficulty about his drain taxes. It does not appear, however, that he knew or had ever heard that the note which Mr. Wenban presented to him there was given for the payment of the tax against Mr. Stewart. He was not advised of this fact at the time of taking the note. The orders held by him were of some value. They were indorsed by the parties from whom he had taken them, and there is nothing in the record showing that any one was complaining of this drain tax but Mr. Stewart. Other parties against whom the tax was assessed had paid their taxes on that drain, and that portion assessed against the township had been paid, and the moneys were in the hands of the township treasurer; at least, there is nothing in the record showing that this fund arising from that portion of the drain taxes assessed was not in the hands of the treasurer.

The simple fact, therefore, remains that the plaintiff was exchanging these drain orders to Mr. Wenban, who was at that time township treasurer, for a note which Mr. Wenban held in his individual name.

It cannot be said that this was sufficient to put the plaintiff upon inquiry as to how Mr. Wenban procured the note, and that a failure to make this inquiry was evidence of bad faith. The note was fair upon its face. Counsel for defendant claim that this statement made by the court below that "the note was fair upon its face" was error; that all the circumstances surrounding the transaction, in the execution and the transfer of the note to the plaintiff, were to be taken into consideration, and submitted to the jury, and that it was for the jury to determine whether the note was fair upon its face. This is not the rule. The note was fair upon its face, for

the reason that it was a promise to pay a certain and definite sum in money, at a time certain, to Mr. Wenban or his order, and there was nothing written upon it indicating that it was taken in an illegal transaction. It was indorsed by Mr. Wenban, and came to the possession of the plaintiff for a valuable consideration. The consideration paid by the plaintiff need not have been in money, in order to have come to him in the due course of business. The circumstances surrounding the transfer to the plaintiff were proper to be shown, as bearing upon the question of the good faith of the purchaser, and were submitted to the jury, but could not properly be considered as a test to the question that the note was fair upon its face.

There was sufficient evidence to go to the jury to sustain the verdict that the plaintiff was a good-faith holder. The note was negotiable and fair upon its face. There was nothing upon its face to notify the plaintiff that it was given in an illegal transaction. To impeach the note in his hands, such facts and circumstances must be shown as would make him guilty of bad faith in taking it. The proper inquiry is, did the party have notice or knowledge, at the time of the transfer, of facts and circumstances which impeach the title as between the antecedent parties to the instrument, as mere carelessness in not making inquiry, unless so gross as to imply bad faith, will not defeat such holder's right to recover. *Davis v. Seeley*, 71 Mich. 209; *Bank v. McClelland*, 19 Col. 608; *Bank v. Young*, 41 N. J. Eq. 531.

There are several other errors assigned, none of which we deem material to notice, being satisfied that the questions of fact were fairly submitted to the jury.

The judgment must be affirmed, with costs.

The other Justices concurred.