McINTOSH *v.* DETROIT SAVINGS BANK.

PARTNERSHIP—LIABILITY OF BANK FOR MISAPPROPRIATION OF PRO-
CEEDS OF PARTNERSHIP CHECKS.

Under the uniform partnership act (Comp. Laws Supp. 1922,
§ 7966 [9 (1, 2)]), a bank with which a partnership did
business is not liable for the misappropriation of money
received by one of the partners in cash by indorsing partner-
ship checks, since he is an agent of the partnership and was
apparently carrying on the business of the partnership, but
where the partner indorsed partnership checks and deposited
the proceeds to the credit of his personal account the bank
is liable, since it is chargeable with notice that such action
was not apparently for the carrying on of the business of the
partnership in the usual way.

Appeal from Wayne; Dunham (Major L.), J.,
presiding. Submitted January 23, 1929. (Docket
No. 19, Calendar No. 33,709.) Decided June 3, 1929.
Rehearing denied September 4, 1929.

Bill by Charles McIntosh against the Detroit Sav-
ings Bank and another for an accounting of partner-
ship funds. From a decree for defendant bank,
plaintiff appeals. Reversed and remanded.

*Groesbeck, Sempliner & Kelly (Jason L. Honig-
man,* of counsel), for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant
bank.

POTTER, J. Plaintiff, as assignee of the C. & S.
Auto Sales Company, a partnership which consisted
of James H. Cranston and Floyd Z. Sweet, filed a
bill in the Wayne circuit court in chancery against

defendant, for an accounting, and to recover from it $9,060 which he claimed the bank owed him as assignee of the C. & S. Auto Sales Company. It is the claim of plaintiff that the C. & S. Auto Sales Company was dealing in second-hand cars in Detroit; that at the time the partnership business began, it opened a bank account with defendant, and defendant contracted with the partnership that the signature of both partners should be signed to the orders for withdrawals of its funds, or checks, and no funds could be withdrawn from the bank except on the signatures of both Cranston and Sweet.

The signature card and agreement was as follows:

"Form 258

"C & S Auto Sales Co.
"In account with The Detroit Savings Bank,
"Detroit, Michigan.

"Below please find duly authorized signatures, which you will recognize in the payment of funds or the transaction of other business on this account. I hereby authorize you to charge this account the sum of $1.00 per month, if the daily average balance is less than $100.00.

(Signed) "James H. Cranston    To sign

(Signed) "Floyd Z. Sweet    To countersign

"Address 3740 Cass Ave.
"Dated 9/23/21."

It is the further claim that, during the time the C. & S. Auto Sales Company was doing business, Cranston, one of the partners, forged Sweet's signature to three checks on defendant bank and received thereon a total of $700. The partnership owed plaintiff $10,265.53, and prior to the commencement of suit assigned to him its claim against defendant. There is no dispute about the $700 with-

drawn from defendant on Cranston's forgeries. The partnership owed the bank $1,171.79, and upon an accounting the trial court dismissed the bill of complaint, inasmuch as it found the partnership owed the bank more than the amount the bank had permitted to be withdrawn on Cranston's forgeries. Plaintiff appeals.

The dispute arises over money of the partnership obtained by Cranston substantially as follows: The partnership was engaged in buying and selling automobiles. When an automobile was sold a check would be given in payment therefor to the partnership. Cranston would indorse the check with the name of the partnership, per J. H. Cranston, and present it to defendant for deposit in his personal account, or take part or all the proceeds of the check in cash, and deposit in the partnership account either no part of the proceeds of the check or a part thereof, as the case might be.

Cranston's balance in his personal account in defendant bank was augmented by credits resulting from the deposit of checks drawn to the partnership or the proceeds thereof, the credit being made by defendant to Cranston's individual account instead of the account of the partnership. No inquiry was made by the defendant bank as to Cranston's authority to convert the partnership funds to his individual account, though it acted with full knowledge of his acts. The question is whether the bank is liable for paying money to Cranston on his indorsement of partnership checks which belonged to the partnership, and knowingly giving him credit for partnership funds.

"SEC. 6. (1) A partnership is an association of two or more persons to carry on as co-owners a business for profit." Comp. Laws Supp. 1922, § 7966 (6).

It is a legal entity, separate from the individuals composing it. *Thurston* v. *Detroit Asphalt & Paving Co.,* 226 Mich. 505; Parsons on Partnership (4th Ed.), § 63. Its property is distinct from that of the individual members of the partnership. *Hubbardston Lumber Co.* v. *Covert,* 35 Mich. 254; *Dobson* v. *Whitker,* 242 Mich. 308. There is community of property, interest, and profits. *Beecher* v. *Bush,* 45 Mich. 188 (40 Am. Rep. 465); *Dutcher* v. *Buck,* 96 Mich. 160 (20 L. R. A. 776); *Brotherton* v. *Gilchrist,* 144 Mich. 274 (115 Am. St. Rep. 397).

"Sec. 9. (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership," * * * Comp. Laws Supp. 1922, § 7966 (9).

"(2) An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners." Comp. Laws Supp. 1922, § 7966 (9).

If the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority, then his acts do not bind the partnership. Comp. Laws Supp. 1922, § 7966 (9 [1]).

"Sec. 3. (1) A person has knowledge of a fact within the meaning of this act not only where he has actual knowledge thereof, but also when he has knowledge of such other facts as in the circumstances shows bad faith." Comp. Laws Supp. 1922, § 7966 (3).

The authority of a partner to make lawful contracts for the firm does not authorize making unlawful contracts without the knowledge of the other partners. *Minthorn* v. *Haines*, 169 Mich. 169. Each partner is the agent of his copartners in the transaction of partnership business, but not in matters foreign to that business. One partner cannot bind his copartner by any contract without the scope of the partnership. *Township of Wexford* v. *Seeley*, 196 Mich. 634.

The law has always been solicitous not to hinder the free circulation of commercial paper having a legitimate inception. *Nichols* v. *Sober*, 38 Mich. 678.

"To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." 2 Comp. Laws 1915, § 6097.

"It will be observed from this provision of the negotiable instruments law, that one on whom the law imposes the burden of showing good faith must show something more than that he had no actual knowledge of the fraud. He must show that he had no knowledge of facts or circumstances that would operate to create a belief in his mind that there was fraud. He must show that there were no facts or circumstances known to him of such a character as to show bad faith in the taking of the instrument." *Case* v. *City Nat'l Bank*, 240 Mich. 419.

If there is nothing on the face of commercial paper to cast suspicion on its character, it can be impeached in the hands of a holder for value only by evidence of the holder's bad faith. *Miller* v. *Finley*, 26 Mich. 249 (12 Am. Rep. 306); *Stevens* v. *McLachlan*, 120 Mich. 285. An indorsee can be deprived of

his right as a *bona fide* holder only upon evidence sufficient to show bad faith. *Nichols* v. *Sober, supra; New York Iron Mine* v. *Citizens' Bank,* 44 Mich. 344; *Goodrich* v. *McDonald,* 77 Mich. 486; *Chapman* v. *Remington,* 80 Mich. 552; *Stevens* v. *McLachlan, supra; Case* v. *City Nat'l Bank, supra.* 2 Comp. Laws 1915, § 6097. Bad faith may be shown by evidence of actual knowledge of the purposes for which the paper was given. Comp. Laws Supp. 1922, § 7966 (3 [1]). *Stevens* v. *McLachlan, supra.* An indorsee of commercial paper has no right to disregard any circumstance known to him calculated to lead a prudent man to suspect the indorser might be acting in fraud of his principal. *New York Iron Mine* v. *Citizens' Bank, supra.*

All partnerships are more or less limited in scope. 3 Kent, Comm. (14th Ed.), p. 42. One partner may not use partnership funds for private purposes. *Kemeys* v. *Richards,* 11 Barb. (N. Y.) 312; *Rogers* v. *Batchelor,* 12 Pet. (U. S.) 221; *Viles* v. *Bangs,* 36 Wis. 131; *Cotzhausen* v. *Judd,* 43 Wis. 213 (28 Am. Rep. 539); *Burwell & Clarke* v. *Springfield,* 15 Ala. 273; *Price* v. *Hunt,* 59 Mo. 258; *McNair* v. *Platt,* 46 Ill. 211; *Gove* v. *Lawrence,* 6 Lans. (N. Y.) 89; *Hurt* v. *Clarke,* 56 Ala. 19 (28 Am. Rep. 751); *Smith* v. *Andrews,* 49 Ill. 28; *Billings* v. *Meigs,* 53 Barb. (N. Y.) 272; *Purdy* v. *Powers,* 6 Pa. 492; *Ex parte Bushell,* 3 Mont. D. & DeG. Rep. (Eng.) 615; *Todd* v. *Lorah,* 75 Pa. 155; *Wise* v. *Copley,* 36 Ga. 508; *Arden* v. *Sharpe,* 2 Esp. (Eng.) 524; *Kendal* v. *Wood,* 6 Law R. Ex. 243; *Green* v. *Deakin,* 2 Starkie (Eng.) 347; 3 Kent, Comm. (14th Ed.), p. 42; Story on Partnership (7th Ed.), §§ 131, 132.

When Cranston, having possession of valid checks of third persons belonging to the partnership, and payable to it, indorsed those checks in the partner-

ship name per J. H. Cranston, and deposited them or the proceeds thereof to the credit of his own account in his own name in defendant bank, it, from the face of such checks themselves, not only had notice but knowledge of the ownership thereof and of their proceeds and of Cranston's misappropriation of such partnership funds. 3 Kent's Comm. (14th Ed.), p. 42; *Green* v. *Deakin, supra;* 1 Lindley on Partnership (2d Amer. Ed.), p. 171; 30 Cyc. 510; *Hale* v. *Windsor Savings Bank,* 90 Vt. 487 (98 Atl. 993); *U. S. Fidelity & Guaranty Co.* v. *Adoue,* 104 Tex. 379 (137 S. W. 648, 138 S. W. 383, 37 L. R. A. [N. S.] 409, Ann. Cas. 1914 B, 667); *Bank of Hickory* v. *McPherson,* 102 Miss. 852 (59 South. 934); *Toronto Club* v. *Dominion Bank,* 25 Ont. Law Rep. 330; *Mitchell* v. *First Nat'l Bank,* 203 Ky. 770 (263 S. W. 15); *Wagner Trading Co.* v. *Battery Park Nat'l Bank,* 228 N. Y. 37 (126 N. E. 347, 9 A. L. R. 340); *Ward* v. *City Trust Co.,* 192 N. Y. 61 (84 N. E. 585); *Niagara Woolen Co.* v. *Pacific Bank,* 141 App. Div. (N. Y.) 265 (126 N. Y. Supp. 890); *U. S. Fidelity & Guaranty Co.* v. *People's Bank,* 127 Tenn. 720 (157 S. W. 414); *Bischoff* v. *Yorkville Bank,* 218 N. Y. 106 (112 N. E. 759, L. R. A. 1916F, 1059); *Havana Central R. Co.* v. *Knickerbocker Trust Co.,* 135 App. Div. (N. Y.) 313 (119 N. Y. Supp. 1035); *Havana Central R. Co.* v. *Central Trust Co.,* 123 C. C. A. 72, 204 Fed. 546 (L. R. A. 1915 B, 715); *Farmers' Loan & Trust Co.* v. *Fidelity Trust Co.,* 30 C. C. A. 247, 86 Fed. 541; *Gray* v. *Johnston,* L. R. 3 Eng. & Ir. App. Cas. 1; *National Bank* v. *Insurance Co.,* 104 U. S. 54. See *Empire Trust Co.* v. *Cahan,* 274 U. S. 473 (47 Sup. Ct. 661, 57 A. L. R. 921).

It dealt with such funds without making inquiry of the other partner at its peril. *Todd* v. *Lorah, supra; Ex parte Bushell, supra.* It knew Cranston was, *prima facie,* committing a fraud upon his part-

ner, 1 Lindley on Partnership (2d Amer. Ed.), p. 171; 30 Cyc. 510; and neither the transfer nor the indorsement were binding on the firm without actual authority or ratification.  30 Cyc. 512.  *Wise* v. *Copley, supra; Arden* v. *Sharpe, supra; Havana Central R. Co.* v. *Knickerbocker Trust Co., supra; Toronto Club* v. *Dominion Bank, supra; Bank of Hickory* v. *McPherson, supra; Scott, Baker & Co.* v. *Bandy,* 2 Head (39 Tenn.), 197; *Newman* v. *Richardson* (C. C.), 9 Fed. 865; *Huntington* v. *Lyman & Co.,* 1 D. Chip. (Vt.) 438 (12 Am. Dec. 716); *Hartness* v. *Wallace,* 106 N. C. 427 (11 S. E. 259); *First National Bank* v. *State Nat'l Bk.,* 65 C. C. A. 406, 131 Fed. 422.  When defendant bank permitted Cranston to check out the funds so misappropriated and deposited, it actively participated in the fraud perpetrated on the partnership, and became liable for the proceeds of the checks so misappropriated by Cranston.  It is immaterial that the bank did not profit, the test is, Did the partnership lose?  One who ought to suspect is bound to inquire, and the law presumes he knows what proper inquiry would disclose.  *Ward* v. *City Trust Co., supra.*  The defendant bank could not deliberately shut its eyes to facts which, upon their face, showed a misapplication by Cranston of partnership funds, and thus aid him in securing the proceeds of his defalcation.  *Niagara Woolen Co.* v. *Pacific Bank, supra.*

"In such cases the creditor, dealing with the partner and knowing the circumstances, will be deemed to act *mala fide* and in fraud of the partnership, and the transaction by which the funds, securities, and other effects of the partnership have been so obtained will be treated as a nullity."  Story on Partnership (7th Ed.), § 132, and cases cited; *Hotchin* v. *Kent,* 8 Mich. 526; *Mechanics' Bank* v. *Barnes,* 86 Mich. 632; *Childs* v. *Pellett,* 102 Mich. 558.

It is said the partnership must be held to have had knowledge of Cranston's transactions with the bank, and plaintiff, as assignee of the partnership, is therefore estopped from maintaining against it the claim here made. This contention is answered by the statute, which provides that notice to one partner is notice to all "except in the case of a fraud on the partnership committed by or with consent of that partner." Comp. Laws Supp. 1922, § 7966 (12).

The decree of the trial court will be reversed, with costs to appellant, and a decree entered holding defendant entitled to credit for the money owed it by the partnership, the defendant liable for the money paid out by it on Cranston's forgeries, the defendant not liable for the money paid out on Cranston's checks on his personal account issued in payment of firm indebtedness, and not liable for money paid out to Cranston on partnership's checks cashed by him when such cash was not redeposited to Cranston's credit in defendant bank, and liable for money paid out on Cranston's checks upon his own account derived from the checks of the partnership indorsed in the partnership name by Cranston and deposited to the credit of his personal account in defendant bank or the proceeds thereof paid to him and immediately deposited to the credit of his personal account in defendant bank, except as above indicated, and remanding the cause for an accounting in accordance herewith.

NORTH, C. J., and FEAD and CLARK, JJ., concurred with POTTER, J.

FELLOWS, J. The so-called signature card set forth in the opinion of Mr. Justice POTTER was an agreement between the bank and the firm by which the bank was authorized by the partners and the part-

nership, and only authorized, to pay out the firm's money on a firm signature there agreed upon. The bank breached this agreement to the damage of the plaintiff and the partnership. It should respond in this action. The decree should be reversed and the case remanded for an accounting. Plaintiff should have costs of both courts.

Wiest and McDonald, JJ., concurred with Fellows, J.

Sharpe, J. The plaintiff claims by an assignment of the partnership debt, executed by Sweet. He has, of course, no right other than the partnership would have had in an action brought by it against the defendant bank. Evidence as to the understanding of the partners as to what was to be done with its funds was admitted as binding upon Cranston, who is also a defendant, but not as against the bank. The ruling of the court in this respect was clearly right, and the evidence so admitted must not be confused with that affecting the rights of the partnership as against the bank.

The plaintiff here seeks to charge the defendant with the proceeds of certain checks, drawn on other banks, but payable to the partnership, which were presented by Cranston to the defendant for deposit or payment. His counsel very appropriately group them in three classes for our consideration:

"In the first class, Cranston indorsed the firm name, presented the check to the bank, and received cash for the full amount of the check. In the second class, Cranston indorsed the firm name, listed the checks on deposit slips for the firm account and then wrote underneath 'less cash' a certain amount. In such instances, the latter sum was given in cash to Mr. Cranston, while the remainder was credited by the bank to the firm account. In the third class,

Cranston indorsed the firm name and underneath it his own, and then deposited the checks to the credit of his own personal account at the bank.''

1. *First and Second Classes.* In my opinion, the language on the signature card applied only to the withdrawal of moneys from the firm account in the bank, and in no way restricted Cranston, as a partner, from indorsing the checks drawn payable to the firm and depositing them in the firm account, or securing the cash thereon. The right of a partner to indorse checks drawn payable to the partnership is expressly provided for in section 7966(9 [1]), Comp. Laws Supp. 1922 (the uniform partnership act), quoted by Mr. Justice POTTER.

In *Bank* v. *Freeman,* 47 Mich. 408, 411, it was said:

''If the parties were engaged as copartners in the business of running the vessel, there could be no doubt, we suppose, but that paper received in the regular course of the business, payable to the order of the firm, might be indorsed by any member thereof in the firm name so as to bind the other members thereby.''

Sweet testified:

''I knew Cranston was indorsing the checks for deposit. He had my authority to place the indorsement of the company on the back of the checks for the purpose of depositing them in the bank.''

The bank had no knowledge, and it seems clear that none can be imputed to it, that the cash paid Cranston on these checks was not to be used in the partnership business. The record discloses that a part of it, at least, was used in payment of the wages of those employed by it, including both Sweet and Cranston, who were drawing weekly salaries for their services. Cranston testified:

''A lot of times I would get part cash to meet

current bills, such as pay rolls and other things that we paid in cash around the salesroom.''

The rule applicable to the acts of corporate officers, trustees, etc., does not apply to partnerships. In my opinion, no liability attached to the bank relative to these checks.

2. *Third Class.* Cranston admitted that he deposited some of the firm checks to the credit of his personal account. In the section of the partnership act following that above referred to, it is provided:

''An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners.'' Comp. Laws Supp. 1922, § 7966(9 [2] ).

The bank was chargeable with a knowledge of this provision. The evidence does not warrant a finding that Sweet consented to such action. It cannot be said that this act of Cranston was ''apparently for the carrying on of the business of the partnership in the usual way.'' The teller who received the deposits had no recollection of this being done. He testified that, if it was, he ''thought it was the proper thing to do.'' The bank should be charged with the amount of such deposits. Cranston also testified that some of the partnership debts were paid by him by checks drawn on this (his personal account). If so, the partnership received the benefit of such payments, and credit should be allowed the bank therefor.

The record contains the following stipulation:

''It was agreed between counsel, with the approval of the court, that the case should be submitted to the court upon the main questions involved and that if the court should find that defendant, The Detroit Savings Bank, was indebted to plaintiff as alleged

in the bill of complaint, that thereupon the matter should be referred to a circuit court commissioner to ascertain the amount of such indebtedness.''

In my opinion, the decree entered should be reversed and set aside and the case remanded to the trial court for an accounting, applicable only to the third class of checks. Additional proof may be taken, if desired, relative to them and to the payments, if any, of the firm debts made by Cranston out of the moneys in his personal account. The amount due from the partnership to the bank, amounting to $1,171.79, must also be considered, as also the amount of the forged checks, of which there is no dispute.

A decree may be entered in conformity herewith and the case again submitted on the filing of the report on the accounting. Costs will then be determined.

NORTH, C. J., and FEAD and CLARK, JJ., concurred with SHARPE, J.